**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION, RAIL SERVICES PLANNING OFFICE, Respondent,**

**Consolidated Rail Corporation, Intervenor.**

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION, RAIL SERVICES PLANNING OFFICE, Respondent.**

**Nos. 79–1580, 81–2570.**

United States Court of Appeals, Third Circuit.

Argued June 15, 1982.

Decided June 28, 1982.

Lewis H. Van Dusen, Jr. (argued), Henry S. Hilles, Jr., James C. Ingram, Drinker, Biddle & Reath, Philadelphia, Pa., for Southeastern Pennsylvania Transp. Authority; William F. Baxter, Asst. Atty. Gen., John J. Powers, III, Andrew Limmer, Attys., Dept. of Justice, Washington, D. C., of counsel.

Robert S. Burk, Acting Gen. Counsel, Henri F. Rush, Associate Gen. Counsel, H. Glenn Scammel (argued), Atty., I. C. C., Washington, D. C., for Interstate Commerce Commission and United States of America.

Jerome J. Shestack (argued), Ralph G. Wellington, Pamela A. May, for intervenor, Consolidated Rail Corp., Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., John W. Rowe, Patricia A. Godfrey, Philadelphia, Pa., of counsel.

Before ALDISERT, GIBBONS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Southeastern Pennsylvania Transportation Authority (SEPTA) petitions pursuant to 28 U.S.C. §§ 2342 and 2321 to set aside an order of the Rail Service Planning Office of the Interstate Commerce Commission (RSPO) promulgating a Standard for Determining Commuter Rail Service Continuation Subsidies which makes SEPTA responsible for costs resulting from commuter rail accidents occurring while such service is provided by Consolidated Rail Corporation (Conrail). We deny SEPTA's petition for review.

This is the third occasion upon which SEPTA has attempted to have this court impose different terms and conditions than those determined by RSPO for the operation by Conrail of commuter rail services on behalf of SEPTA.[1] All three cases stem from the enactment by Congress in 1973 of the Regional Rail Reorganization Act, Pub. L.No.93–236, 87 Stat. 985, 45 U.S.C. § 701 et seq. (1976) (3R Act). In order to reorganize the bankrupt rail services in the Northeast and Midwest the 3R Act created Conrail as a for-profit corporation providing freight services over a restructured rail network transferred to it. The 3R Act obligated Conrail to continue providing commuter rail passenger service, however, if states or local transportation authorities made payments to subsidize that unprofitable service. 45 U.S.C. § 744(c)(2)(A). Congress charged RSPO with the obligation to promulgate standards for computation of such subsidies. 3R Act, § 205, *currently codified at* 49 U.S.C. § 10362 (Supp. III 1979). In the Railroad Revitalization and Regulatory Reform Act of 1976, Pub.L.No.94–210, 90 Stat. 31, 45 U.S.C. § 801 et seq. (1976) (4R Act), Congress added a requirement that compensation principles be adopted which avoided cross-subsidization among commuter, intercity and freight services. 4R Act, § 309,

---

1. *See Southeastern Pennsylvania Transp. Auth. v. I. C. C.*, 644 F.2d 238 (3d Cir. 1981) (*SEPTA I*); *Southeastern Pennsylvania Transp. Auth. v. I. C. C.*, 644 F.2d 253 (3d Cir. 1981) (*SEPTA II*).

*currently codified at 49 U.S.C.* § 10362(b)(5)(A).

SEPTA, a Pennsylvania public authority responsible for public transportation in the five county Philadelphia metropolitan area, has arranged with Conrail since 1976 for the subsidization of commuter rail passenger services in those counties.[2] RSPO, after appropriate rulemaking proceedings, issued Standards for Determining Commuter Rail Service Continuation Subsidies and Emergency Operating Payments. 41 Fed. Reg. 32516–61 (1976). As amended, these standards are now found at 49 C.F.R. Part 1127 (1981). The standards place the responsibility for casualty costs and additional insurance costs resulting from commuter service on SEPTA. 49 C.F.R. § 1127.7 (f)(3)(vii).

SEPTA petitioned RSPO to reopen its rulemaking proceedings in order to amend the standard with respect to casualty and liability costs, and on October 11, 1977, RSPO agreed to do so. RSPO noted, in doing so, that there was pending in Congress proposed legislation to reduce the subsidizers' casualty-liability exposure. The proposed legislation was not enacted. Instead Congress ordered a study to determine the best means of compensating Conrail for liabilities it might incur for personal injury and property damage resulting from passenger service, "in a manner which shall prevent the cross-subsidization of passenger services with revenues from freight services operated by [Conrail]." Pub.L.No.95–607, 92 Stat. 3059, 3066. When Conrail and SEPTA failed to reach agreement on an allocation of the costs of reparations, RSPO concluded that in the absence of definitive legislation the extant standard should continue. 44 Fed.Reg. 16408–11 (1979).

Following two serious commuter railroad accidents SEPTA again petitioned RSPO for a change in the standard, and on July 27, 1981, RSPO reiterated its position that costs of reparations are solely related to commuter service and are thus avoidable costs within the meaning of 45 U.S.C. § 744 and 49 U.S.C. § 10362. 46 Fed.Reg. 38393 (1981). RSPO also noted that the study mandated by Pub.L.No.95–607 resulted in a report by the Secretary of Transportation which noted the Conrail-SEPTA dispute and concluded that the extant standard adequately protected Conrail. *Id.*

Our review of RSPO's action is limited to determining whether its action is arbitrary and capricious. 5 U.S.C. § 706(2)(A). *Southeastern Pennsylvania Transportation Authority v. I. C. C.*, 644 F.2d 253, 257 (3d Cir. 1981). We find no abuse of discretion. RSPO's decision is, in our view, entirely consistent with the statute.

The petition for review will be denied.

---

2. That arrangement will terminate on January 1, 1983, since Congress has designated a new agency, Amtrak Commuter Service Corp., as the operator of subsidized commuter services as of that date. Northeast Rail Service Act of 1981, 95 Stat. 647–49, 45 U.S.C. §§ 744a, 584.